PS5-104                                                                NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3518
_____

PATRICE HARRIS,
Appellant

v.

HOMECOMINGS FINANCIAL SERVICES, INC./BANK ONE;
NOVASTAR MORTGAGE, INC.;
EXPRESS FINANCIAL SERVICES, INC.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 07-cv-00622)
District Judge:  John P. Fullam

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 22, 2010

Before:  SMITH, FISHER and GARTH, <u>Circuit</u> <u>Judges</u>.

(Filed: April 26, 2010)
_____

OPINION
_____

PER CURIAM

Appellant Patrice Harris filed suit in the Philadelphia County Court of Common

Pleas against Express Financial Services, NovaStar Mortgage, and Homecomings

Financial Services, and her civil action was removed by one of the defendants to United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1332(a) and § 1441(a). Harris alleged in her Complaint that she purchased the property located at 6114 North 8th Street in Philadelphia for $50,000 in December of 1998, with an adjustable mortgage rate of 11.25%. Harris, a school children's librarian with a law degree, made all payments in accordance with the loan. In September of 2000, Harris decided to refinance her mortgage. Unrepresented and without an agent of her own, Harris agreed with one Mark L. Witmer of Express Financial Services to refinance at a rate of 9.875%. NovaStar is the lender that refinanced Harris's mortgage in September of 2000 and Express Financial Services was the company that conducted the closing. The $44,000 loan, which was secured by a mortgage on the property, was sold almost immediately to Homecomings, which began servicing the loan in November of 2000.

Harris alleged in her Complaint that she agreed only to a fixed rate of 9.875% and she stated that she did not learn that she had an adjustable rate until she read a Homecomings statement dated September 20, 2002, the two-year anniversary of the loan. She began investigating the circumstances of her loan at that time and she alleged that she learned that her name and initials were forged on certain of the loan documents. In her Complaint, Harris asserted claims against NovaStar and Homecomings for violating the federal Truth in Lending Act ("TILA") (Count I), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCCPL") (Count II). She also claimed

fraudulent inducement (Count III), fraudulent misrepresentation (Count IV), unjust enrichment (Count V), a violation of the Thirteenth Amendment (Count VI), and abuse of process (Count VII). Harris complained that Express Financial and NovaStar engaged in predatory lending practices by agreeing to refinance her mortgage at a fixed rate of 9.875%, and by altering the loan documents to reflect an adjustable rate loan. She alleged that Homecomings interfered with her tax payment arrangement with the City of Philadelphia, charged her unexplained charges and fees, and failed to account for her payments properly. After an arbitration resulted in a ruling for the defendants, Harris sought a trial *de novo*.

A two-day jury trial was conducted on June 8 and 9, 2009. Harris testified and introduced certain documents into evidence, and she was cross-examined about those documents and the defendant's exhibits. At the close of Harris's case, both Homecomings and NovaStar moved for judgment as a matter of law. In support of this motion, they argued that all of Harris's claims other than the UTPCPL claim were time-barred, that alternatively her unjust enrichment claim would not lie because the relationships were contractual, and the UTPCPL claim failed because Harris could not prove causation in light of the fact that the interest rate never adjusted above the rate she claimed she was promised, and was not the reason she defaulted on the loan.

The District Court directed a verdict in favor of the defendants pursuant to Federal Rule of Civil Procedure 50. The court reasoned that almost all of the claims were barred

3

by the statute of limitations, Harris did not establish causation, every document of record established that this was an adjustable rate mortgage, and Harris's forgery allegations had no evidentiary support. Harris filed a motion for a new trial, which was denied by the District Court in an order entered on July 24, 2009, the same day the court entered judgment in favor of the defendants. The claims against Express Financial, which is in bankruptcy, were dismissed without prejudice.

Harris appeals. She contends in her pro se brief that the District Court's dismissal of the jury under Rule 50 denied her constitutional right to a trial by jury, the court wrongfully granted the Rule 50 motion, her unjust enrichment claim was not time-barred, and her UTPCPL claim should not have been dismissed because she proved causation. See Appellant's Brief, at 13-19. Harris also alleged that the District Court exhibited bias and impropriety in the court's statements to her about her case. See Appellant's Brief, at 25-29.

We will affirm. We have jurisdiction under 28 U.S.C. § 1291. We turn first to the propriety of the District Court's directed verdict pursuant to Rule 50 in favor of the defendants. Our review of the District Court's Rule 50 directed verdict is plenary. See Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990). Rule 50 of the Federal Rules of Civil Procedure permits a directed verdict when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. Pro. 50(a). The rule requires a court to "review all the

4

evidence in the record . . . [and in] doing so, draw all reasonable inferences in favor of the nonmoving party . . . [without] mak[ing] credibility determinations or weigh[ing] the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 149-50 (2000). Rule 50(a) does not violate the right to a jury trial under the Seventh Amendment. Galloway v. United States, 319 U.S. 372, 389-96 (1943).

The UTPCCPL was designed to prevent fraud; common law elements of justifiable reliance and causation must be satisfied. See Tran v. Metropolitan Life Ins. Co., 408 F.3d 130, 139-41 (3d Cir. 2005). The evidence established that, on June 10, 2002, Homecomings notified Harris that she was in default because she was two months in arrears. Supp. App. 258-263. At that point in time the interest rate on her loan had yet to adjust and was still 9.875%. In a statement dated September 20, 2002, Homecomings notified Harris that her interest rate was going to adjust in October of 2002 to the lower rate of 8.125%. Supp. App. 198. Harris claimed that it was only then that she realized she had an adjustable rate mortgage. In January of 2003, Homecomings again notified Harris that she was in default. Supp. App. 264-69. In April of 2003, the interest rate adjusted again, this time to 9.125%. Supp. App. 203. The last payment Harris made on her mortgage (other than payments made in bankruptcy) was in September of 2003. Supp. App. 208. In October of 2003, the interest rate adjusted back to the original rate of 9.875%. Supp. App. 209. Harris filed for bankruptcy on March 5, 2004 to forestall

5

foreclosure proceedings.[1]  Thus, as of April of 2004, by which time Harris had long been in default under the loan, the interest rate was not higher, nor had it ever been higher, than the original, agreed-upon rate of 9.875%.  Indeed, for much of that time it had actually been lower.  Whatever caused Harris to default on her loan, it was not the adjustable rate feature of her mortgage.  See Tran, 408 F.3d at 139-41 (UTPCCPL requires proof of causation).

In addition, the loan note and mortgage, the originals of which were introduced as evidence at trial, established that the loan had an adjustable interest rate feature that would activate in accordance with the formula contained in the note after a two-year period during which the rate would be fixed at 9.875%.  Harris testified that Witmer promised her a fixed rate of 9.875%, but the loan documents properly disclosed the terms of the loan and the adjustable nature of the interest rate.  Harris did not introduce any documents containing fixed rate terms, and she signed a number of closing documents identifying her mortgage loan as an adjustable rate loan, including an Adjustable Rate Note.  She offered no independent evidence that NovaStar altered any of the loan documents, or forged her signature, and she did not credibly explain how her original signature appeared on the adjustable rate loan documents without any evidence of tampering.  The evidence was not sufficient for a jury to reasonably find that Harris's

---

[1]The Chapter 13 case was dismissed at Harris's request on September 22, 2006, when she decided to pursue this civil action instead.  Her home subsequently was sold in foreclosure.

signature on the loan documents was forged, or that the loan documents had been altered. With respect to her specific claims against Homecomings, although Harris showed the jury the Homecomings statements with the alleged improper fees and charges, she did not submit any evidence to show that the fees or charges she objected to were fabricated or otherwise unlawful. She did not prove that her payments were not properly applied, or that she was billed multiple times for the same monthly payment. In short, the evidentiary record created by Harris was insufficient to prove that any of her specific claims against Homecomings had merit.

Moreover, each claim advanced by Harris apart from her UTPCPL and unjust enrichment claims plainly was barred by the applicable statute of limitation even if the "discovery rule" applied in her case. In order to equitably toll a statute of limitations, a plaintiff must establish, in pertinent part, that the defendant actively misled her about her claims or that some other extraordinary circumstance prevented her from pursuing her claims. See Santos ex rel. Beato v. United States, 559 F.3d 189, 197 (3d Cir. 2009). Moreover, she must demonstrate that she diligently pursued her claims. See McAleese v. Brennan, 483 F.3d 206, 219 (3d Cir. 2007). Given the number of loan documents Harris executed on September 25, 2000 evidencing the presence of an adjustable rate feature, we doubt that she has demonstrated that she is entitled to tolling for the two years between her loan closing and her alleged discovery of the adjustable rate in September or early October of 2002.

But even if the discovery rule applied, all but two of her claims accrued when she received and read the Homecomings statement dated September 20, 2002 and admittedly discovered that she had an adjustable rate. Harris initiated her civil action in the Court of Common Pleas by filing a Praecipe for Writ of Summons on or after September 22, 2006. The federal Truth in Lending Act has a one-year limitation period under 15 U.S.C. § 1640(e). Pennsylvania has a two-year limitation period for fraud (and conspiracy to commit fraud) claims under 42 Pa. Cons. Stat. Ann. § 5524(7), a two-year limitation period for abuse of process claims, see id. at § 5524(1), and a two-year limitation period would also apply to a constitutional personal injury claim, see id. at § 5524(2); Wilson v. Garcia, 471 U.S. 261 (1985) (state statute of limitations applies to actions under 42 U.S.C. § 1983). As such, no reasonable jury could have returned a verdict for Harris on five of her seven counts, and the District Court thus properly directed a verdict in favor of the defendants on these counts.

If the discovery rule applied, Harris's unjust enrichment claim might well be timely, 42 Pa. Cons. Stat. Ann. § 5525(4) (providing for four-year limitation period), but a directed verdict was nonetheless proper on this count as well because "the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract." Benefit Trust Life Ins. Co. v. Union Nat. Bank of Pittsburgh, 776 F.2d 1174, 1177 (3d Cir. 1985) (quoting Schott v. Westinghouse Electric Corp., 259 A.2d 443, 448 (Pa. 1969)). At trial,

8

the defendants and Harris each introduced a number of contract documents, including the Adjustable Rate Note and Mortgage, which plainly established that the relationship was contractual.

In her motion for a new trial, Harris claimed that the District Court had no basis for granting the Rule 50(a) directed verdict, and she repeated the arguments she had made at trial. She further alleged that the court conferred with the defendants outside of her hearing about the Rule 50 motion and made a racially biased remark. For the reasons already stated, the directed verdict was proper and Harris was not entitled to a new trial on that issue. With respect to her contentions of bias and impropriety, which she has elaborated upon in her pro se brief, we have read the trial transcript and find no support in it for these contentions. Notwithstanding Harris's lack of familiarity with trial court practice and procedure, the District Court gave her great latitude in presenting her case, see, e.g., N.T., 6/8/09, at 73, 75, 99, and made every effort to understand her allegations. Furthermore, the statement she claims proves racial bias can be found nowhere in the transcript of the trial, and, in fact, the District Court recognized that "many African American people are treated improperly in our society still," N.T., 6/9/09, at 56. As to the District Court's use of an idiom in directing a verdict in favor of the defendants, N.T., 6/9/09, at 56, we note that the comment followed directly after Harris made an incoherent argument summarizing her essential allegations, see id. We conclude that the District Court's comment does not, on the record as a whole, establish bias. Cf. Liteky v. United

<u>States</u>, 510 U.S. 540, 550-51 (1994) (judge is not recusable for bias or prejudice where his knowledge and negative opinion were acquired during the course of proceedings and upon completion of the evidence).[2]

For the foregoing reasons we will affirm the judgment of the District Court directing a verdict in favor of NovaStar Mortgage and Homecomings Financial and order denying Harris's motion for a new trial. The appellees' unopposed motion to file a timely supplemental appendix is granted.

---

[2]According to the *Random House Historical Dictionary of American Slang* 417 (1997), the phrase "out [or off] in left field" means "eccentric," "absurd," "nonsensical," "unreasonable," "entirely wrong," or "far from the mark."